# Miller *v.* Westerhoff.

*Sale—Guaranty of title—Execution—Stay of earlier writ—Effect on junior writ.*

The fact that an earlier writ was stayed does not affect the levy on another writ which was at the time in the sheriff's hands and on which the levy on the former writ was noted.

A sale and delivery by the sheriff under such second writ disposes of the owner's title, and will defeat his recovery on a contract of sale in which he had guaranteed to his vendee a clear title. Through plaintiff's failure to make good his title to the property, his vendees lost the fruit of their attempted purchase, and when it was taken from them by the sheriff's vendee they had a complete defense to the plaintiff's claim for the purchase money.

Argued Nov. 16, 1899. Appeal, No. 188, Oct. T., 1899, by plaintiff, in suit of Henry W. Miller against Peter Westerhoff, Henry Westerhoff and F. S. Napier, trading as Westerhoff Bros. & Napier, from judgment of C. P. Lancaster Co., June T., 1897, No. 86, on verdict for defendants. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Affirmed. Opinion by ORLADY, J.

Assumpsit. Before LIVINGSTON, P. J.

It appears from the evidence that plaintiff sold to defendants a boiler and engine, hangers and pulleys, etc. There was evidence tending to show an agreement that the defendants should not take the goods unless the title was good. After the agreement of sale it appears that the engine and boiler were sold by the sheriff on a vend. ex. as the property of one J. M. Krick, under the following circumstances: In September, 1894, two executions were issued against Krick, one by Hiram Messinger, on September 24, to November term, 1894, for $500. On this writ the sheriff levied on the boiler and engine. This writ was stayed before sale and nothing further was done under it. Another writ issued on September 25, by Jacob Wolf, to November term, 1894, for $1,200. The indorsements on these several writs appear in the opinion of the court. The boiler and engine, etc., in question were sold under the second writ, and possession delivered to the sheriff's vendee.

[At the trial the court refused to entertain the motion of the plaintiff to strike out the offers of the vend. ex. and fi. fas. as testimony in the case.] [1]

[It subsequently refused plaintiff's offer to prove by Milton B. Dissinger as follows: Plaintiff offers to prove by this witness that at the time the fi. fa. of November term, 1894, No. 47, was in the hands of the sheriff, he made the levy; that he went to Landisville and levied on the goods that are marked upon the back of the writ; that he did not make any levy by virtue of this writ on any engine or boiler, or any other goods that were located in the borough of Ephrata. Objected to by defendant.

By the Court: It appears on the face itself there had been a levy on these goods. Having done so of course we disallow it. Plaintiff excepts.] [2]

Defendant submitted the following point:

[The evidence of both plaintiff and defendant is that the sale was conditional on vendor having a good title; that if the vendor did not have a good title vendee was not to take property at any price; that subsequently the property was sold by the sheriff and taken out of vendee's possession by the purchaser; vendor, therefore, had not a good or marketable title, and the sale was not executed, and the verdict must be under the law and the evidence for the defendant. *Answer:* This we answer in the affirmative, and would have so answered had there been no point here; but, points having been presented, we thought it our duty to answer them.] [7]

Plaintiff submitted among others the following points:

[5. The sale of the engine and boiler under the vend. ex., to April term, 1897, No. 110, was not valid, for the reason that there was no levy on the fi. fa. issued to November term, 1894, on the engine and boiler, and as a consequence no title passed to the purchaser of it at said sheriff's sale, and defendants should not have given up possession of it. *Answer:* Our answer to the fifth point is that according to the law and the evidence, the records presented and admitted, the point is not sustained.] [5]

[6. Under the law and the evidence the verdict must be for the plaintiff. *Answer:* The sixth point under the law and the evidence the verdict must be for the plaintiff, we refuse.] [6]

The court charged the jury as follows :

This is an action brought by Henry Miller, plaintiff, to recover from Peter Westerhoff, Henry Westerhoff and F. S. Napier, doing business as Westerhoff Bros. & Napier, for the sum of $250, for property which he alleges he has sold to them for that price.

You remember the evidence shows there was some bargaining with reference to this property, and finally concluded that Mr. Weidman was to buy the property if the title was good, if he could get a good title to it. There appears to have been some controversy in regard to the fact at the time it was offered to these people; and the contract was finally they were to take it if the title was good at the price of $250.

They undertook to look about for the title themselves, on their own part to see whether it was good or not; and the testimony is that it had not been for some time agreed upon between them, but it was finally sold for $250 provided that title was good, the condition of the sale. If the title was found to be not good it was not to be a sale, they were not to recover.

Some of the evidence shows a man named Weidman, I believe, undertook to look after the title, and did make some effort. The plaintiff says, or some of his witnesses, that he said he would consult, or did consult Mr. Brown and Mr. Wolf; Wolf having at some prior time had a claim upon or owned this property.

Mr. Weidman in his testimony says, he did not tell these people that he had seen Brown or Wolf, and that they had said it was good. He said he never told him so.

[The question here to be decided is but a single question whether or not he has satisfied this jury by the evidence presented that under the law his title is good.

It is said, and papers have been shown here which show it has been sold as the property of another, and, as I understand the evidence, taken away from the defendants in this case.

If that would be so, it would not be such title as he undertook to give.

I believe the evidence shows that fact, I believe the papers I had yesterday show that to be the fact. If that be so then your verdict would have to be for the defendant.] [3]

[We now say to you in conclusion that having examined the

points carefully, and finding the property has been sold as the property of another after these people purchased it from this man, it could not have been his at the time, and therefore your verdict will have to be in this case for the defendant. The clerk will take the verdict.] [4]

Verdict and judgment for defendants. Plaintiff appealed.

*Errors assigned* were (1) in refusing motion for plaintiff, reciting same. (2) In refusing plaintiff's offer, reciting offer. (3, 4) To portions of the judge's charge, reciting same. (5, 6) In answer to plaintiff's fifth and sixth points, reciting points and answers. (7) In answer to defendants' point, reciting point and answer.

*A. B. Hassler*, for appellant.—The fis. fas. referred to are November term, 1893, Nos. 46 and 47.

No. 46 should not have been considered by the jury. It was stayed by the court. Under it the boiler and engine were levied on by the sheriff.

No. 47 should not have been considered by the jury for the reasons that the levy did not show that the boiler and engine had been levied on, and the court (2nd specification form) refused to permit plaintiff to show that it had not been levied on under this writ, and that the sheriff was never in view or possession of it after the writ came into his hands.

The goods must be in view of the sheriff to constitute a valid levy: Duncan's Appeal, 37 Pa. 500.

A mere paper levy is no levy at all, and a sale under it is a nullity, as to subsequent execution creditors and purchasers: Carey v. Bright, 58 Pa. 70 (84); Lowry v. Coulter, 9 Pa. 349; Weidensaul v. Reynolds, 49 Pa. 73; 1 Tr. & H. (Brightly) secs. 1112, 1113, 1117.

The property levied on may be designated in the body of the return, or by reference to the schedule, attached thereto, and it is said that such designation is requisite to render the levy good: 1 Tr. & H. (Brightly) sec. 1113.

*W. U. Hensel*, for appellee.—All the assignments of error may be argued together, in considering the strenuous effort of

appellant to establish that his title to the property was good, notwithstanding the sheriff's sale swept it away from his vendees :

1. Vendor levied on it as the property of another.

2. Vendor knew it had been levied upon.

3. He himself put in a property claim for it after the second fi. fa. issued.

4. He was served with the rule to come into court and maintain his claim.

5. He failed to do so.

6. He permitted it to be sold on a vend. ex.

7. It was in the same place when sold and taken away as when he originally had it levied on as Krick's property.

8. The sale was never "completed by defendant's taking and using the goods" as alleged in appellant's argument.

On the other hand they remained, exactly where they were when the vendor undertook to sell them, until the purchaser on the vend. ex. removed them.

There was a cloud on the title to this property from the time Messinger first levied upon it until it was finally sold, without protest from him, on the vend. ex.

In Riley v. Ogden, 185 Pa. 506, it was decided : The execution and delivery of an interpleader bond does not discharge the goods levied upon from the lien of the execution, or substitute the bond for the goods, but merely operates as a transfer of the goods from the custody of the sheriff to that of the claimant pending the issue as to their ownership."

OPINION BY ORLADY, J., July 26, 1900 :

The plaintiff sued to recover the sum of $250 which was the price of an engine, boiler, hangers and pulleys that had been sold and delivered by him to the defendants, who resisted payment on the ground that at the time of the alleged sale it was distinctly understood that unless the plaintiff had a clear title to the property they would not buy it at any price, and that it had been established afterwards that the plaintiff did not have any title thereto.　On the trial it appeared that Hiram Messinger issued a writ of fieri facias to No. 46, November term, 1894, on a judgment he had against J. M. Krick.　Jacob Wolf issued a writ of fieri facias to No. 47, November term, 1894, on

a judgment he had against the same defendant. The levy on fi. fa. No. 46, which was issued September 24, was indorsed on the writ as follows : " September 24, 1894, on shafting and pulleys, one caramel cutter, stick machine rollers, two fans, rock, six tables, seventeen trays on third floor, mixing tank, two milk tanks, engine and boiler, pump, shafting, etc., levied on as per property of J. M. Krick." On fi. fa. No. 47, which was issued September 25, the indorsement is " levied September 27, 1894, on 42,500 cigars, 100 lbs. scrap, 1,000 Spanish, 150 pounds Little Dutch, 50 pounds binders, 18 pounds smoking tobacco, 1 lot chewing tobacco, 65 sets blocks, 2 presses, 1 heater, set harness, fly net, carriage, bunching machine, household and kitchen furniture, etc., levied as personal property of J. M. Krick." From these indorsements on the writs of fi. fa. it is clear that, at the time the sheriff indorsed his levy upon writ No. 47, he had an actual levy on the engine and boiler by virtue of his seizure of these items under writ No. 46. A sheriff having two or more executions in his hands, seizes goods ; this is the levy ; he is not required to make a separate schedule for each. He may make the list on one execution and refer to it in his return on the others. The levy, however, all the time is on all the executions, if it is so made and so expressed to be at the time it was made : McCormick v. Miller, 3 P. & W. 230. If a second fi. fa. be delivered to a sheriff after he has the defendant's goods in possession under the prior fi. fa. the goods are bound by the second execution, subject to the first from the date of the delivery of the last writ. In contemplation of law, he is deemed (unless it appears to be clearly otherwise) to have seized under the second writ, the same property that was seized under the first, and not merely the surplus, from the time the second writ comes to his hands, or at any rate, from the time he indorses the seizure : Watmough v. Francis, 7 Pa. 206 ; Winegardner v. Hafer, 15 Pa. 144. When the sheriff levies on a specific article or articles, naming them, without more he will be confined to his levy ; as for example where he levies on a horse, he will not be permitted to sell a cow, or other article of property. But not so when words are added as very plainly indicating his intention to include other property, although not specifically named or enumerated ; and in this consists the distinction : Wilson Sieger & Co.'s Appeal,

13 Pa. 426.   The language of the levy is sufficiently broad and comprehensive in the et ceteras, to have justified the sheriff in selling on writ No. 47, all of the defendant's personal property, not exempted by law : Schuylkill County's Appeal, 30 Pa. 358 ; Weidersaul v. Reynolds, 49 Pa. 73 ; Dixon v. Sewing Machine Co., 128 Pa. 397 ; Sweet v. Williams, 162 Pa. 94.   On September 29, Messinger gave notice to the sheriff in writing that " the engine, water tube boiler, fittings and pipings for the same, levied upon by virtue of fi. fa. No. 46, as the property of J. M. Krick was not the property of J. M. Krick at the time the execution and levy was made, but was at that time the property of the plaintiff, Hiram Messinger."   The Messinger writ was stayed by order of the court, though the reason for this action is not given.   On October 8, following, the sheriff presented his interpleader petition to the court of common pleas, praying for a rule on Messinger and Clementine L. Krick, who claimed certain household goods, to appear and maintain or relinquish their respective claims to the property on which he had levied.   Messinger was served with this rule but did not appear and a writ of venditioni exponas, reciting the Wolf judgment, the levy on the engine, boiler, etc., the claim of Messinger to the property and his neglect to appear and maintain his claim, was then issued to No. 110, April term, 1897, on which writ, the property was sold by the sheriff and delivered to the purchaser.

The only question in the case is the validity of the levy on the engine, boiler, etc., under writ No. 47, which was disposed of correctly by the learned trial judge.

The fact that the earlier writ was stayed did not affect the levy on another writ which was at that time in the sheriff's hands and on which the levy was noted.   It was complete as to each writ and was so recognized by the sheriff when he petitioned, under both writs, for an interpleader, and scheduled this identical property as having been levied upon by him as the property of Krick but claimed by Messinger.   The sale under the vend. ex. divested the title of Krick, and, for the purpose of this case, as effectually disposed of the claim of Messinger.   The location of the property had not been changed from the time of the first levy, and Messinger's attempt to perpetuate his claim to it, through the name of the plaintiff, so

as to sell it to the defendants cannot avail against them after they were obliged to surrender it to the sheriff's vendee.

The several writs were properly received in evidence to show that Miller did not have title to the property when it was sold to the defendants.  The notice to the sheriff was a suspicious item of proof for the purpose of showing Messinger's assertion of title to the same property, while he acted for the plaintiff in negotiating this sale.  The exact condition of affairs is shown to have been known by Messinger.  Through the plaintiff's failure to make good his title to the property, the defendants lost the fruit of their attempted purchase and when it was taken from them by the sheriff's vendee they had a complete defense to the plaintiff's claim for the purchase money.

The judgment is affirmed.