## D. W. Braden's Estate.    Appeal of Isaac K. Wood, Assignee.

*Assignment for creditors—Execution—Priority of lien.*

Where execution is issued under a judgment, and on the same day, but at a later hour, a deed of assignment for the benefit of creditors is delivered by the execution debtor to his assignee, the execution becomes a lien upon all the personal property of the debtor until the following return day; but then, unless an actual levy is made in the interval, the life of the writ expires.

*Execution—Insufficient return—Parol evidence.*

In such a case, where a paper, constituting an important portion of the sheriff's return to the writ, has been lost, parol evidence is admissible to show the contents of the paper.

When a writ of execution was issued, a paper enumerating and describing certain bank stock to be levied upon, was placed in the hands of the sheriff. The sheriff made the levy, but left the stock in the possession of the debtor. The sheriff made no indorsement on the writ; the list of stock was lost, and not returned attached to the writ. No other execution was issued against the debtor by other parties after the return day. *Held,* that parol evidence was properly admissible to prove the contents of the paper which was lost.

*Execution—National bank stock—Constitutional law.*

There is nothing in the constitution or laws of the United States which forbids the seizure and sale, under state laws, of national bank stock.

Argued Oct. 3, 1894.   Appeal, No. 279, Oct. T., 1894, by Isaac K. Wood, from order of C. P. Greene Co., Jan. T., 1890, No. 1, overruling exceptions to auditor's report.   Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Exceptions to auditor's report.   Before MESTREZAT, J.

The facts appear by the opinion of the Supreme Court.

The exceptions to the report of the auditor, J. P. Teagarden, Esq., were as follows:

"1. The auditor erred in awarding the proceeds of the bank stock and other stocks to fi. fa., No. 50, January Term 1890, Jane Howden v. D. W. Braden.

"2. The auditor erred in not awarding the proceeds of the sale of said stocks to Isaac K. Wood, assignee for the benefit of the creditors of D. W. Braden.

"3. The auditor erred in finding that stock in a national bank is subject to seizure, levy and sale by the sheriff upon a writ of fi. fa.

"4. The auditor erred in finding that the bank stock and other stock, the sale of which produced the greater part of the fund for distribution, were levied upon by the sheriff, and he erred in finding that the facts testified to by witnesses, H. B. Axtell, John T. Goodwin, sheriff, and T. R. Goodwin, deputy, or shown by other evidence in the audit, constituted a levy on said stock, even if true.

"5. The auditor erred in finding that a levy can be established by parol testimony.

"6. The auditor erred in not considering the return of the sheriff upon said writ of fi. fa. as conclusive evidence of all proceedings thereon, and said return not showing that a levy had been made upon said fi. fa., he should have found that no levy had been made thereon.

"7. The auditor erred in not considering as incompetent and irrelevant all the evidence which was offered in this audit for the purpose of showing that a levy had been made on said stocks.

"8. The auditor should have found that the lien of said fi. fa., if any such lien ever existed, expired on the return day of the writ, and that on and after said return day, the said stocks were free from the lien of said levy, if any such lien ever existed, and that said execution creditor had no claim on the same after said return day.

"9. The auditor erred in not awarding the entire fund for distribution to Isaac K. Wood, assignee for benefit of the creditors of D. W. Braden."

The court overruled the exceptions, and made an order confirming the auditor's report.

*Errors assigned* were (1–9) in overruling exceptions, quoting them ; (10) entry of decree, quoting it.

*R. F. Downey, F. W. Downey* with him, for appellant.—The lien expired on the return day of the writ unless a levy had been made on or before such return day : Com. v. Contner, 18 Pa. 446.

The paper or list of stock given to the sheriff does not constitute a levy: McClelland v. Slingluff, 7 W. & S. 134; Henderson v. Henderson, 133 Pa. 399; Barnes v. Billington, 1 W. C. C. R. 38.

The action of the court in staying this writ was after the return day of the writ, and it surely will not be claimed that the levy could be established by anything done after that date: Duncan's Ap., 37 Pa. 500.

The evidence produced does not show that a levy was made by the sheriff on the stocks: 2 Bouv. L. Dict. 34; Herman on Executions, 235, 562; Duncan's Ap., 37 Pa. 502; Bank v. Crozer, 22 N. J. L. 383.

The sheriff having made a full and complete return to his writ to the court, in which he sets forth in detail the articles levied upon and sold, giving his proceedings in full on said writ, the return is final and conclusive until the same is amended by permission of the court, from which the writ issued: Heinbaugh v. Powell, 13 Pa. C. C. R. 360; Henderson v. Henderson, 133 Pa. 399; Diller v. Roberts, 13 S. & R. 60; Sawyer v. Curtis, 2 Ash. 127.

This is an attempt not to amend the levy and return of the sheriff but to establish a new levy on other property, at another date, by parol evidence. This cannot be done: McClelland v. Slingluff, 7 W. & S. 134; Kintzing v. McElrath, 5 Pa. 467; Barnes v. Billington, 1 W. C. C. R. 38; Mentz v. Hamman, 5 Whart. 150.

The bank stock was not the subject of seizure, levy and sale on fi. fa. and consequently the execution creditor is in no event entitled to the proceeds of the sale of such stock: 23 A. & E. Ency. L. 632; Herman on Executions, 562; see also McCulloch v. Maryland, 4 Wheat. 316; Osborn v. Bank, 9 Wheat. 739; Bank v. Com., 9 Wall. 353; Pittsburg v. Bank, 55 Pa 52; Markoe v. Hartranft, 6 Am. L. Reg. N. S. 487.

*J. W. Ray, H. B. Axtell* with him, for appellee.—The bank stock was a proper subject of levy: Act of March 29, 1819, § 2, 7 Sm. Laws, 217; Com. v. Watmough, 6 Whart. 136; Lex v. Potter, 16 Pa. 295; Com. v. Ruske, 26 Pitts. L. J. 121.

The stock was levied upon by the sheriff. The presumption is in favor of a valid levy: Fitler v. Patton, 8 W. & S. 455.

He is not required to make a list of the stocks: Wood v. Vanarsdale, 3 Rawle, 405 ; Weidensaul v. Reynolds, 49 Pa. 76.

The sheriff and his deputy were competent witnesses to show what was done by them under the writ of fieri facias against Braden : Weidensaul v. Reynolds, 49 Pa. 76; McGinnis v. Pierson, 85 Pa. 114.

OPINION BY MR. JUSTICE DEAN, Jan. 7, 1895 :

On November 27, 1889, Daniel W. Braden made a general assignment for benefit of creditors of all his estate to Isaac K. Wood. The deed was recorded same day. On the same day, Jane Howden entered a judgment against Braden for $7,397.61, and immediately issued execution thereon ; the writ came into the sheriff's hands at 11.30 A. M., as shown by the indorsement; the deed of assignment was delivered to the assignee at 1.50 P. M. When the execution came into the sheriff's hands, Braden was the owner of three shares Masonic Building Association stock, of the par value of $10.00 per share ; 20 shares of Telephone Co. stock ; three shares of capital stock of Farmers' and Drovers' National Bank of Waynesburg, Pa. (new series), par value $50.00 per share ; 35 shares of the same bank of the par value of $25.00 per share ; also a lot of hogs and other personal property on several farms owned by him.

By virtue of his writ, the sheriff, on the 6th and 9th of December following, levied on the personal property on the farms, and sold it, and paid the money into court ; he then advertised the bank and other stocks for sale, the day of the sale being January 11, 1890. Before the sale, Wood, the assignee, presented his petition to the president judge, averring that Jane Howden, plaintiff, had no lien on said stocks by virtue of the execution, and that the title to the stocks was in him by reason of the assignment, and that because of the disputed title they would not sell for their value. Thereupon, all parties consenting, an order was made staying the execution, and directing the assignee to make sale of the stocks and hold the proceeds until the rights of the several claimants were determined. Accordingly, the assignee sold the stocks for the sum of $1,572.75, and held the fund for distribution. The court then appointed J. P. Teagarden, Esq., auditor, to take testimony and ascertain liens against the property which produced the fund.

On the hearing before the auditor, he found as facts : 1. No memorandum of a levy upon these stocks was made upon the writ by the sheriff.   2. In his return to the writ, he does not state he had levied upon them.   3. He did not have the physical possession of the stocks at any time after the writ came into his hands.   4. He did advertise them for sale, as if levied upon, on January 11, 1890.   5. That Mr. Axtell, attorney for the execution creditor, about December 20th, handed to the sheriff a list of the stocks, which the sheriff exhibited to Braden the debtor, who pronounced it correct.

The sheriff testified that, when Mr. Axtell gave him the list, he called upon Dr. Braden, who acknowledged he was the owner of the stocks specified in it, and that then he made a levy on these stocks, and, according to his recollection, he put the list in the writ, but did not attach or fasten it.   He can give no reason for not transferring the list to, or transcribing it on the writ, as part of the levy, except that he forgot to do so ; he knows he intended to put it on.

The auditor concludes that the evidence is sufficient to establish the fact of a levy made by the sheriff on the stocks before the return day of the writ.   He therefore finds that the writ of the execution creditor was a lien upon the stocks, and on the proceeds of the sale in the hands of the assignee, and directs that the amount, less costs, shall be paid over by the assignee to her.   To this report exceptions were filed by the assignee, which were overruled by the court, and the report confirmed absolutely, from which decree the assignee takes this appeal.

Appellant's ten assignments of error may be condensed into one without eliminating anything of merit, or weakening the force of the argument.   Did the sheriff make a legal levy on these stocks before the return day of his writ ?   If he did, the fund goes to the execution creditor; if he did not, it goes to the assignee.

As has already been noticed, the writ came into the sheriff's hands at 11.30 A. M. of November 27, 1889.   By that mere fact, it became a lien upon all the personal property of the debtor until the return day, the 4th of January, 1890.   But then, unless an actual levy was made in the interval, the life of the writ expired.   By virtue of it, the sheriff, on December 6, 1889,

did levy upon and indorse the same, of certain other personal property upon the farms of Braden.  On the 9th of same month, he indorsed the levy of still other property.  All of this he sold on 18th, 19th and 20th of December; and made return thereof.  The appellee claims that he also made a levy on this bank and other stocks about the 20th of December, fourteen days before the return day, and that notice of the sale on the 11th of January, 1890, was published some day of the last week in December, 1889.  The fact that the sheriff announced in December he would sell these stocks has no further significance, than that, it is to some extent corroborative of his statement that he had actually levied on the stock about the 20th of December.  It is argued with some force, that it is improbable he would offer for sale property which he had not seized and could not deliver.  Mr. Axtell gave a written list of the stocks with their par value to the sheriff to be levied on, who then went to Dr. Braden and inquired if it was correct; he acknowledged he owned the stocks named on the list; the sheriff then made a levy on the stocks, and put the list in the writ.  The deputy sheriff testifies, he saw this list of stocks, and thinks it stated the names of the parties and number of the case, headed by a direction from Mr. Axtell to levy.  This paper, he says, was kept inside the writ.  The proper, as well as the best evidence of a levy, is the indorsement of the officer upon his writ.  Whatever custody he may then take of the property, in the interval between seizure and sale, is not important to the creditor; the officer's responsibility commences from the date of the levy.  So it seems to us the fact that, from the date of the alleged seizure, the stocks were left in possession of the debtor, is not significant; the other personal property, of which the levy was indorsed, continued in the possession of the debtor until sale, the levies having been made from lists furnished by him.  As to these stocks, he acknowledged he owned them, and that the list was correct.  If the levy was made, the sheriff, at his own risk, could leave them in custody of the debtor.  No particular formality was legally necessary to constitute a levy.  The sheriff might announce his levy on the stocks in the list, to the debtor, and then inclose the list with his writ, to be afterwards attached to or more securely made part of it.  This would constitute a suffi-

cient levy or seizure, for the sheriff thereby became answerable for the stocks, the same as if he had taken them to his office.

The only question is, was there an actual levy ? There is no indorsement on the writ as evidence of it.   The list has been lost, but its contents are substantially proven by Mr. Axtell and the deputy sheriff, as well as by the sheriff.   He may have indorsed upon it with ink or pencil " levied " before placing it in the writ. If it were now produced with such an indorsement, with the writ, that would be sufficient indorsement of a levy.   The evidence is clear, the sheriff intended to make a levy when he called upon Dr. Braden, for he had with him the list of the stocks furnished by the creditor's attorney with instructions to levy.   As to whether he actually did levy, the evidence is much weaker. But this was all considered by the auditor, with the witnesses before him, and he has found as a fact that the levy on these stocks was made about the 20th of December.   In this there is no manifest error.   If actually made, the loss of the paper enumerating and describing the stocks, and which it was intended should be attached to and made part of the return to the writ, cannot invalidate the lien of the execution creditor.

It will be observed that this is not a contention between two execution creditors, in which the junior creditor claims to have been misled by an incomplete record, and then thus misled, on the return day issued his writ, and levied upon the property on which there was apparently no prior lien, thus incurring costs by the neglect of an officer.   It is simply a question as to whether property, on which the execution creditor, without question, had a lien from the moment the writ came to the sheriff, lost it by the officer's failure to make it effective by indorsement of levy before the return day.   It is not necessary to decide what would be the effect of the failure to return and put upon the record a levy on the older writ, before the return day, if the case were between two writs.   The misleading record in no way misled this assignee, therefore we do not pass upon this question.

The cases cited by appellant are not applicable to the facts of this one.   In McClelland v. Slingluff, 7 W. & S. 134, the paper, purporting to be a levy, was never inclosed in or attached to the writ, nor did the sheriff testify he had gone to the debtor, who verified its correctness, and that he then made

a levy.  In Henderson v. Henderson, 133 Pa. 399, it is ruled that mere specific written instructions to the sheriff to levy on certain property, do not constitute a levy.  It would have been held otherwise, if the sheriff, in that case, as in this, in pursuance of the instructions, had made an actual levy, and then inclosed the list with his writ.

In this case, there is no attempt to contradict the sheriff's return, it is sought only to supply an omission occasioned by the loss of an important part of the paper before the return day.  If he had lost the writ itself, with the indorsement upon it, parol proof could have been invoked to supply them.

The argument of the learned counsel for appellant, that the national bank stock levied upon is not subject to seizure and sale under state laws, and that such a procedure could only be authorized by Act of Congress, is ingenious but not convincing.  Our understanding of the Constitution of the United States, is, that all powers not therein granted to Congress, are withheld.  We do not find anywhere in it, a grant of authority to declare exempt from levy and sale, for debts contracted under state laws, the property of debtors, except in bankruptcy proceedings under national bankruptcy laws.

It has been held that the national government has power to charter banks as a necessary and useful instrument in its fiscal operations, and to that end may exempt the shares of stock and issues from taxation.  But Congress has not anywhere, in the national banking law, undertaken to declare that investments in the stock of such banks shall not be subject to seizure for debt.  There is no analogy between the power to regulate and promote, by congressional enactment, the fiscal operations of the government, by taxation or exemption from it, and an attempt to protect a debtor's property from seizure in payment of his debts.  So we are of the opinion that the act of assembly of 1819, which subjects the stock of any individual in any body corporate to levy and sale, the same as other goods and chattels, authorized this levy.

The decree is affirmed, and the appeal is dismissed at costs of appellant.